**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:05cv403-A** |
| | ) | **(CR NO. 03cr173-N)** |
| **EUGENE ROBERT CHURCH,** | ) | |
| | ) | |
| **Defendant/Movant.** | ) | |

**UNITED STATES'S RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America, by and through its attorney, Leura Garrett

Canary, United States Attorney, and, in compliance with this Court's order to show cause,

responds to Defendant/Movant Eugene Robert Church's Motion Under § 2255 to Vacate, Set

Aside, Or Correct Sentence By a Person In Federal Custody, as follows:

**I.  PROCEDURAL HISTORY AND RELEVANT FACTS**

On August 19, 2003, a grand jury for the Middle District of Alabama returned a five-

count indictment against Defendant/Movant Eugene Robert Church ("Church") and his

codefendant, Gayle Strother ("Strother.")  See Exhibit A, the indictment.  Count one of the

indictment charged that, from an unknown date, but commencing at least as early as on or about

January 1, 2003, the exact dates being unknown to the grand jury, in Autauga County and Elmore

County, within the Middle District of Alabama, and elswhere, Church and Strother did

knowingly and intentionally conspire, combine and agree together and with other persons known

and unknown to the grand jury to distribute and possess with intent to distribute 50 grams or

more of methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. §

841(a)(1), all in violation of 21 U.S.C. § 846.  Count two charged that, on or about January 6,

2003, in Autauga County, within the Middle District of Alabama, Church and Strother, while aiding and abetting one another, did knowingly and intentionally possess with the intent to distribute 50 grams or more of methamphetamine, a Scheduled II Controlled Substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

Count three charged that, on or about January 6, 2003, in Autauga County, within the Middle District of Alabama, Church and Strother, while aiding and abetting one another, did knowingly use and carry, during and in relation to, and possess in furtherance of, a drug trafficking offense, namely possession with the intent to distribute methamphetamine as charged in count two, a drug trafficking crime prosecutable in a Court of the United States, firearms, to wit: a Glock Model 19, 9 millimeter pistol, serial number YX405; a Browning Highpower, 9 millimeter pistol, serial number 245N18229; and, a Rossi .38 caliber revolver, serial number W462694, all in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A).

Count four charged that, on or about January 6, 2003, in Autauga County, within the Middle District of Alabama, Church, an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, did knowingly possess, in and affecting commerce, firearms, to wit: a Glock Model 19, 9 millimeter pistol, serial number YX405; a Browning High Power, 9 millimeter pistol, serial number 245N18229; and, a Rossi .38 caliber revolver, serial number W462694, in violation of 18 U.S.C. § 922(g)(3).  Count five of the indictment related solely to Strother.

Church proceeded to jury trial on January 29, 2004, where he was represented by Richard Waldrop, Esq.  On the second day of trial, Church advised the Court that he wished to plead guilty.  See Exhibit B, transcript of the guilty plea hearing in this case.  The United States informed the Court that, in return for Church's guilty plea to all four counts against him, it was

2

recommending a sentence of sixteen years.  Exhibit B, at 61-62.  Church's counsel also agreed with the United States' understanding that, if Church received a sentence of sixteen years or less, he would waive the right to appeal any issue to the Eleventh Circuit Court of Appeals.  Id. at 62.

The Court had Church placed under oath, and informed him of his responsibility to respond truthfully to its inquiries.  Id. at 62.  Church told the Court that two years ago he had been treated for depression related to posttraumatic stress syndrome that was triggered by a boating accident.  He stated that he was treated in Panama City, Florida, and had last seen a therapist a year and a half prior to his plea.  Id. at 63-64.  The Court asked Mr. Waldrop whether he had any concern that Church's mental health history had given him any reason to doubt his competency to enter a guilty plea.  Waldrop responded that he was not concerned.  Id. at 64. Church then informed the Court that he had sufficient opportunity to discuss his indictment with his counsel, and that he was satisfied with the representation provided to him.  Id. at 65.  The Court then inquired whether Church understood the unwritten plea agreement as described by the United States, and he responded that he understood and did not have any questions.  Id. at 66.

The Court then restated the terms of the plea agreement, including the possibility that his assistance in another prosecution could result in an additional reduction of sentence upon motion of the United States.  Id. at 66-67.  Church stated that he understood and was in agreement with the plea agreement as stated.  Id. at 67.  It then asked Church whether he understood that it could reject the United States' recommendation and impose a more severe sentence that the one contemplated in the plea agreement, and that he would not be able to withdraw his guilty plea. Id. at 67-68.  Church responded that he understood.  Id. at 68.  Next, the Court asked the United States to state the maximum possible penalties, and any mandatory minimum penalties which

3

applied to the offenses for which he was entering guilty pleas.  Id. at 69.  The United States

explained that counts one and two carried mandatory minimum imprisonment term of not less

than ten years, and not more than life.  The mandatory minimum imprisonment term for count

three was not less than five years, and not more than life, and the prison sentence for count four

was not more than ten years.  Church stated that he understood the penalties as stated by the

United States.  Id. at 70, 72.

The Court asked Church whether he understood the application of the U.S. Sentencing

Guidelines.  This included an explanation that a presentence investigation report prepared by the

U.S. Probation Office would produce a sentencing recommendation, which he would have an

opportunity to challenge, as the recommendation may differ from any estimated sentence

provided by his attorney.  Id. at 73.  Church stated that he understood.  Id.  The Court reviewed

with Church his agreement to waive appeal and the right to collaterally attack his convictions and

sentences in he received a sentence of sixteen years or less.  Id. at 74.  Church stated that he

understood these provisions.  Id.  Finally, the Court explained to Church the rights that he would

be relinquishing by pleading guilty, including the right to a trial by jury, proof of guilt beyond a

reasonable doubt, cross-examination of witnesses, and to testify on his own behalf.  Id. at 74-75.

The Court then instructed the United States to establish a sufficient factual basis for

Church's guilty pleas.  While still under oath during questioning by the United States, Church

acknowledged that he in fact committed each of the four separate crimes charged in the

indictment.  Id. at 76-84.  Specifically, he admitted that he conspired with Strother to distribute

between 500 grams and 1.5 kilograms of methamphetamine as charged in count one, and that he

possessed with intent to distribute 50 grams of methamphetamine as charged in count two.  Id. at

76-79.  In response to whether he carried a firearm in furtherance of a drug trafficking offense as charged in count three and as described by the United States, Church stated that he did not feel that he violated 18 U.S.C. § 924(c)(1)(A), but that he would plead to it.  Id. at 79-81.  Although the United States had described how Church had firearms around his person in such a way that they were available for immediate use to protect his drugs and drug money, it explained again that possession of the firearm was not accidental but facilitated his distribution of methamphetamine.  Id. at 80-82.  Church then admitted that he was guilty of the offense.  Id. at 82.  Finally, Church admitted that he was an unlawful user of methamphetamine, a controlled substance, and that he unlawfully possessed a firearm that had moved in interstate commerce.  Id. at 82-83.  After sufficient facts were established by Church, the Court stated that he was fully competent and capable of entering informed pleas, that he was aware of the nature of the charges and the consequences of the pleas, that the pleas were knowing and voluntary, and supported by an independent factual basis containing each of the essential elements of the offenses, the Court accepted his pleas of guilty.  Id. at 84-85.

A presentence investigation report was prepared by the U.S. Probation Office.  The report found that Church was accountable for a total of 55 grams of "ice" methamphetamine, 3.57 grams of methamphetamine, and 6.2 grams of marijuana.  These drug amounts corresponded to a base offense level of 32.  See PSI, at ¶ 21, U.S.S.G. § 2D1.1(c) .  The offense level was reduced by two levels for Church's acceptance of responsibility, which produced a final offense level of 30.  See PSI, at ¶ 27, 29.  Because Church had no prior criminal convictions, his criminal history category was I.  See PSI, at ¶ 33.

A sentencing hearing was held on April 23, 2004.  See Exhibit C, a transcript of the

sentencing hearing. After each Counsel informed the Court that there were no objections to the presentence investigation report, it adopted the report in full. Exhibit C, at 2-3. The report recommended that Church's offense level be established at 30, which, when combined with a criminal history category of I, produced a guideline sentencing range of 120-121 months as to counts one and two, 60 months as to count three, and 97-120 months as to count four. Id. at 3. The Court then sentenced Church to concurrent terms of imprisonment of 120 months as to counts one, two, and four, with an additional, consecutive term of imprisonment of 60 months as to count three. Id. at 4. Church's total term of imprisonment was 15 years, one year less than that contemplated by his plea agreement. The judgment of conviction and commitment was filed in this Court on April 26, 2004.

Church filed this Motion to Vacate, Set Aside or Correct Sentence on April 26, 2005. On May 6, 2005, this Court entered an order directing the United States to respond within thirty days. The United States sought and received extensions of time so that it could secure the necessary transcripts in this case, and now files this response to the § 2255 motion.

## II. CLAIMS RAISED IN THE § 2255 MOTION

As far as the United States can discern, Church raises the following issues in his § 2255 motion:

1.    The quantity of controlled substances attributed to him at sentencing was improperly calculated and resulted in a harsher sentence;

2.    His Sixth Amendment right to a jury determination of the quantity of controlled substances attributable to him was violated;

3.    His guilty plea to count three of the indictment, which charged a violation of 18 U.S.C. § 924(c), was not knowingly and intelligently entered;

4.      His sentence was in excess of the statutory maximum applicable to non-injectible methamphetamine, a Schedule III controlled substance;

5.      His counsel was ineffective due to his failure to appropriately advise him as to the elements of 18 U.S.C. § 924(c);

6.      His counsel was ineffective due to his failure to object to the fact-finding which increased his sentence;

7.      His counsel was ineffective due to his failure to file a motion to suppress evidence or to contact him regarding pretrial motions;

8.      His counsel was ineffective due to his failure to raise his medical condition; and,

9.      His counsel was ineffective due to his failure to assert <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) in a challenge to the constitutionality of 21 U.S.C. § 841(a)(1).

### III.  RESPONSE TO CLAIMS FOR RELIEF

**A.      <u>Church's Petition Is Barred Because He Waived His Right to Seek Relief Under 28 U.S.C. § 2255 When He Entered His Guilty Plea</u>.**

Church agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255 when he entered his guilty plea during his January 30, 2004, guilty plea hearing.  <u>See</u> Exhibit B, at 74. The Court specifically questioned Church as to whether he understood that his plea agreement waived his ability to collaterally attack his sentence, and he stated under oath that he understood this provision.  <u>Id</u>.  Church had also stated under oath that he understood the agreement and that he did not have any questions concerning its terms.  <u>Id</u>. at 66.

The Eleventh Circuit views Church's waiver of his right to seek relief under § 2255 as a contract between the United States and a criminal defendant.  It has stated that

> [A]mong the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. <u>See</u> <u>United States v. Bushert</u>, 997 F.2d 1343, 1350 (11th Cir.1993). In this case, [the appellant's] waiver was clearly knowing and voluntary--he was specifically questioned by the district court regarding the waiver of his right to

appeal. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir.1997). The plea agreement is therefore enforceable and would appear to bar this appeal.

United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).

The Eleventh Circuit has also stated that "a waiver of the right to seek federal habeas review must be 'an intentional relinquishment or abandonment of a known right,' the right to federal habeas review." Allen v. Thomas,161 F.3d 667, 670 (11th Cir. 1998). The record demonstrates that the Court ascertained that Church's assent to the terms of his plea agreement was knowing and voluntary. Exhibit C, at 66, 84. Church's § 2255 motion is thus procedurally barred from review by this Court.

**B.     Church Has Met The One-Year Statute Of Limitations Deadline For The Filing of Claims Under 28 U.S.C. § 2255.**

In the event this Court finds that Church's waiver of his right to seek relief under 28 U.S.C. § 2255 is unenforceable, the United States notes that he has filed his motion in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which to file a motion under the rule. The applicable provision in this case requires that a movant file his § 2255 motion within one year from "the date on which the judgment of conviction became final."

Church was sentenced on April 23, 2004, and judgment was entered on April 26, 2004. He did not appeal his sentence to the Eleventh Circuit Court of Appeals. His sentence became final when the time for filing an appeal to the Eleventh Circuit expired. Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the

Supreme Court expires. See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir.2002).

Likewise, a judgment of conviction becomes final for someone who does not appeal when the

time for seeking that appeal expires. Church had ten days from the April 26, 2004 entry of

judgment by this Court to seek review by the Eleventh Circuit; his judgment of sentence,

therefore, became final on May 6, 2004. Therefore, under § 2255, Church had until May 6, 2005

to file his motion. He filed his motion on April 26, 2005. It is, therefore, timely.

**C.    The Legal Claims in Church's Motion Are Procedurally Defaulted
        And Not Properly Considered In This § 2255 Proceeding Because They
        Could Have Been Raised On Direct Appeal, But Were Not, And Church Has
        Failed To Demonstrate Cause And Prejudice To Overcome These Defaults.**

The legal issues raised by Church in his § 2255 motion are barred from this Court's

review because they could have been, but were not, raised on direct appeal. Because Church did

not raise his claims on direct appeal, however, they are barred in this collateral proceeding,

unless he can show cause and prejudice to overcome the procedural bar. A motion under § 2255

cannot be used as a substitute for appeal, Burke v. United States, 152 F.3d 1329, 1331 (11th Cir.

1998), and claims not raised on direct appeal that could have been are generally barred from

review in § 2255 proceedings, McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001). In

Mills v. United States, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly

summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or
> sentence must be advanced on direct appeal or else it will be considered
> procedurally barred in a [Section] 2255 proceeding.... A ground of error is usually
> "available" on direct appeal when its merits can be reviewed without further
> factual development.... When a defendant fails to pursue an available claim on
> direct appeal, it will not be considered in a motion for [Section] 2255 relief unless
> he can establish  cause for the default and actual prejudice resulting from the
> alleged error....  Alternatively, under the fundamental miscarriage of justice

9

exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

Id. at 1055-56 (internal citations omitted). See also McCoy v. United States, 266 F.3d at 1258

("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish

cause and prejudice for his failure to assert his claims on direct appeal."). The burden of

demonstrating cause and prejudice or a miscarriage of justice is on the movant. See, e.g.,

Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually

innocent[.]' ").

Church has attempted to overcome this rule of procedural default by arguing that his

counsel had the burden of filing "an appeal from any aspect of the case that violated [his] rights."

Church Motion, at 7, ¶ 13. However, as demonstrated in Part III.E., counsel could not be

ineffective for failing to file an appeal where Church had clearly waived his right to appeal if his

total sentence was no more than sixteen years in prison. Therefore, his claims should be

dismissed on procedural grounds.

**D.     Church's Legal Claims Are Without Merit.**

Church claims that the drug quantity attributable to him was improperly calculated in

violation of his Sixth Amendment right to a jury determination, that his guilty plea to count three

was not knowingly and intelligently entered, and that he should have been sentenced under the

statute which applies to Schedule III controlled substances. "A hearing is not required on patently

10

frivolous claims or those which are based upon unsupported generalizations." Stephens v. United States, 14 F.Supp.2d 1322, 1334 (N.D. Ga. 1998), quoting United States v. Guerra, 588 F.2d 519, 520-21 (5th Cir.1979). "[I]n this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations ... the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief.... Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a hearing." Potts v. Zant, 638 F.2d 727, 751 (5th Cir. 1981)(citations omitted).[1] Because Church's motion and the record offer no factual basis or proof – and certainly no corroboration of his claims – necessary to establish his claims, they should be dismissed.

1. **The drug amount attributed to Church was correctly calculated, and did not violate the Sixth Amendment.**

Church submits two claims which related to the drug amount attributed to him. His first claim is that the amount was incorrectly calculated, thus resulting in a harsher, undeserved sentence. The second is that his Sixth Amendment right to a jury determination of the drug quantity was violated. The record disproves both assertions. Church admitted that he conspired with Strother to distribute between 500 grams and 1.5 kilograms of methamphetamine as charged in count one, and that he possessed with intent to distribute 50 grams of methamphetamine as charged in count two. Id. at 76-79. The drug equivalency table at U.S.S.G. § 2D1.1(c) establishes a criminal offense level of 32 for an amount of methamphetamine 500 grams and 1.5 kilograms. Thus, Church's own admission during his guilty plea hearing established facts sufficient to assign

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

his offense level at 32.  And, though Church does not reference any specific authority for his Sixth Amendment claim, he seems to refer to United States v. Booker, ___ U.S. ___, 125 S.Ct. 738 (2005), which held reaffirmed the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  Booker, 125 S.Ct. at 756.

Even though Booker is, by its own terms, and through the decisions of the Eleventh Circuit, not applicable to cases on collateral review, the facts would not support its application. See Varela v. United States, 400 F.3d 864, 867-688 (11th Cir. 2005) Where a defendant admits to the facts that determined his sentence, there is no Sixth Amendment violation under Booker. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).  Church agreed to plead guilty in exchange for a sentencing recommendation of 16 years or fewer in prison.  He was sentenced to a total of 15 years in prison and was within the range contemplated at the time of his plea.  His sentences did not exceed the respective statutory maximums of life, five years, and ten years, and therefore cannot have violated the Sixth Amendment.  Therefore, the record shows that Church's claims of incorrect drug attribution and a Sixth Amendment violation are both without merit, and must be dismissed.

**2.      Church entered a knowing and voluntary guilty plea to the charge that he violated 18 U.S.C. § 924(c).**

Church claims that he was not aware that his possession of the firearms listed in count three had to be in furtherance of a drug trafficking offense in order to have violated 18 U.S.C.

§ 924(c)(1)(A).  He now claims that his possession of the firearms was completely incidental to his drug trafficking, and that he would not have entered a guilty plea if he had understood the required element of a nexus between the trafficking and the firearms.  During his plea colloquy, he stated that he did not believe that he had violated the statute, but that he would plead to it.  Id. at 79-81.  The Assistant United States Attorney twice explained how Church had firearms around his person in such a way that they were available for immediate use to protect his drugs and drug money before Church admitted that he was guilty of the offense.  Id. at 81-82.

The presentence investigation report describes how Church was discovered at the apartment of his codefendant Gayle Strother.  Church was laying on the bed with a Glock, Model 19, 9 mm pistol and a Browning High Power 9mm pistol located on a night stand next to the bed.  A search of the residence produced marijuana, methamphetamine, $9,326.91 in U.S. currency, and a Rossi .38 caliber revolver.  See PSI, at ¶ 11.  The United States had stated during its factual basis for Church's guilty plea that its theory was that the firearm served as protection for his drugs and drug proceeds.  See United States v. Castillo, 406 F.3d 806, 810 (7th Cir. 2005) (Explaining how drug traffickers commonly utilize firearms or weapons to protect their drugs and protect their drug proceeds.)  The record in this case shows that the Assistant United States Attorney clarified for Church the elements of section 924(c).  Exhibit B, at 81-82.  His agreement to enter a guilty plea was therefore knowing and voluntary.

### 3.    All forms of methamphetamine qualify as Schedule II Controlled Substances.

Church claims that the methamphetamine which he trafficked was non-injectible, and therefore classified as a Schedule III Controlled Substance.  Thus, he argues, he should have been sentenced under 21 U.S.C. § 841(b)(1)(D), rather 21 U.S.C. § 841(b)(1)(A).  His argument is

without merit.  On July 7, 1971, the Director of the Bureau of Narcotics and Dangerous Drugs, on behalf of the Attorney General, reclassified methamphetamine from a schedule III drug to a schedule II drug based on its high potential for abuse relative to other substances.  See 36 F.R. 12734, 12735 (July 7, 1971); 21 C.F.R. § 1308.12(d). Title 21 U.S.C. § 811(a) grants the Attorney General the power to reclassify controlled substances.  Title 21 U.S.C. § 812(c), which lists the drug classification schedule, classifies methamphetamine as a schedule II drug when it is contained in "any injectable liquid," but classifies methamphetamine as a schedule III drug when it is in any other form.

Several Courts of Appeals have held that the reclassification of methamphetamine as a schedule II substance applies to all forms of methamphetamine, in accordance with 21 C.F.R. § 1308.12(d), despite the statute's distinction.  See United States v. Macedo, 406 F.3d 778, 784-85 (7th Cir. 2005); accord United States v. Gori, 324 F.3d 234, 240 (3d Cir. 2003) (reasoning that 21 C.F.R. § 1308.12(d) must supercede 21 U.S.C. § 812(c)'s schedule classification as the Attorney General acted pursuant to express authorization and the regulation was properly promulgated); United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994); United States v. Kendall, 887 F.2d 240, 241 (9th Cir. 1989) (per curiam).  Although the Eleventh Circuit has not addressed this specific issue, the overwhelming weight of authority negates Church's claim on the classification of methamphetamine.  Church's claim that he was sentenced under the wrong statute due to a misclassified controlled substance is due to be dismissed.

E.    **Church's Ineffective Assistance of Counsel Claims Are Without Merit.**

Church listed several grounds for ineffective assistance of counsel.  To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance

was deficient and that the deficient performance prejudiced his case. Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Bell v. Cone, 535 U.S. 685, 697-98 (2002) (reaffirming the Strickland v. Washington standard for reviewing ineffective assistance of counsel claims); Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (applying two-part test of Strickland v. Washington). More specifically, Church must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial would have been different. Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of Strickland, this Court must presume that the conduct of counsel was reasonable, Yordan v. Dugger, 909 F.2d at 477. A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'" Gallo-Chamorro v. United States, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted). The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:
>
> > The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

> ... Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have taken the action that his counsel did take....*

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high,"noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. Robinson v. Moore, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000); accord, Robinson v. Moore, 300 F.3d at 1343. In raising ineffective assistance of counsel, Church has failed to plead facts sufficient to demonstrate that he was prejudiced by any of counsel's actions. For that reason, his § 2255 motion should be summarily dismissed.

Church has made a vague and unsupported claim that counsel was ineffective for failing to appeal his case. However, he cannot establish prejudice because his motion does not demonstrate that, even if an appeal had been prosecuted, his case would not have been dismissed by the Eleventh Circuit pursuant to his enforceable waiver of appeal. His counsel has filed an affidavit which states his reason for not pursuing an appeal, i.e., that Church's 15 year sentence was within the range contemplated by his plea, and therefore the appeal waiver remained valid after

16

sentencing.  <u>See</u> Affidavit of Richard Waldrop, Exhibit D, at 6.  Accordingly, there can be no claim of ineffective assistance based on counsel's failure to appeal.

The United States responds to Church's ineffective assistance of counsel claims as follows:

**1.  Counsel was not ineffective regarding Church's understanding of the elements of 18 U.S.C. § 924(c).**

Church claims that his counsel did not inform him of the required nexus between his drug trafficking and his possession of firearms in order to enter a valid guilty plea to 18 U.S.C. § 924(c).  As discussed above in Part III.D.2., Church was fully aware of the factual nuances essential for a violation of the statute.  Exhibit B, at 79-82.  Even though the record shows that the Assistant United States Attorney, rather than his counsel, ensured that he understood the factual requirements, Church cannot claim that he was unaware of the statutory elements essential for his guilty plea.  This claim is wholly without merit.

**2.  Counsel was not ineffective as to Church's sentencing.**

Church claims that counsel was ineffective for failing to object to the fact finding that increased his sentence.  As discussed above in Part III.D.2., Church admitted trafficking an amount of methamphetamine that set his base offense level at 32 under U.S.S.G. § 2D1.1(c).  Exhibit B, at 76-79.  There was no fact finding which produced a higher sentence.  This claim is baseless and must be dismissed.

**3.  Counsel was not ineffective regarding the filing of pretrial motions.**

Church claims that counsel was ineffective for failing to file a timely motion to suppress, and for failing to consult with him regarding pretrial motions.  The record shows that counsel filed

an untimely motion to suppress. (Doc. # 60.) In denying the motion, this Court stated that the untimeliness of the motion was one basis for denial, but that, even if the motion had been timely, it would have been denied due to lack of factual merit. (Doc. #66, attached as Exhibit E.) Counsel cannot be considered ineffective where the habeas claim has no merit, as this claim raised by Church. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (counsel could not be ineffective for failing to raise an issue that would not succeed.) Although Church claims deficient performance as to other pretrial motions, he does not specify the nature of the motions counsel should have filed. The United States cannot respond to claims of this vague nature. Therefore, this claim is baseless and must be dismissed.

**4. Counsel was not ineffective for failing to document Church's medical condition.**

Church claims that counsel was ineffective for failing to adequately information concerning Church's depression and posttraumatic stress syndrome to the Court. Church himself informed the Court of his medical history, but stated that he had not been to a therapist for at least 18 months. Exhibit B, at 63-64. Thus, by Church's own admission, there was no ongoing medical treatment of any condition that was relevant to his methamphetamine trafficking or sentencing.

Counsel filed an affidavit which discusses his attempts to verify Church's medical claims. Exhibit D, at 5-6. He describes his search for the therapist and psychiatrist in Panama City, Florida, and his inability to locate the people Church stated would verify his claims.

**5. Counsel was not ineffective for failing to challenge the constitutionality of 21 U.S.C. § 841(a)(1).**

Church claims that the drug amount and quantity are a critical sentencing factor, and must

18

be established by a preponderance of the evidence.  As discussed above in Part III.D. 1., Church admitted that he trafficked between 500 grams and 1.5 kilograms of methamphetamine as charged in count one, and that he possessed with intent to distribute 50 grams of methamphetamine as charged in count two.  Id. at 76-79.  His offense level reflected this type and quantity of drug.  See U.S.S.G. § 2D1.1(c).  Even though other substances were considered by the U.S. Probation Office in the presentence investigation report, Church did not suffer additional harm due to the type or amount of drugs attributed to him.  Again, counsel could not be ineffective for failing to raise an issue that would not succeed.  United States v. Nyhuis, 211 F.3d at 1344.  Therefore, this claim is baseless and must be dismissed.

## IV.  A HEARING IS NOT NECESSARY IN THIS MATTER

Church has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing.  See Blacklidge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Laetividal-Gonzalez, 939 F. 2d 1455, 1465 (11th Cir. 1991).  Should this Court determine that Church has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

## V.  CONCLUSION

For the above reasons, Defendant/Movant Eugene Robert Church has failed to

demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be

denied without an evidentiary hearing.

Respectfully submitted this 22nd day of August, 2005.

_____
/s/ Stephen P. Feaga, Sr.
STEPHEN P. FEAGA, SR.
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
steve.feaga@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:05cv403-A |
| | ) | (CR NO. 03cr173-N) |
| EUGENE ROBERT CHURCH, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

_____

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: Eugene Robert Church, #05638-017, Forrest City FCI, 1400 Dale Bumpers Road, Forrest City, AR 72335.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Stephen P. Feaga, Sr.
STEPHEN P. FEAGA, SR.
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
steve.feaga@usdoj.gov

21