IN THE UNITED STATES DISTRICT COURT
FOR
THE MIDDLE DISTRICT OF ALABAMA

THE UNITED STATES
OF AMERICA

vs.                                 CRIMINAL ACTION NO.
                                    03-CR-173
EUGENE ROBERT CHURCH

VOLUME II OF II
2ND DAY OF
JURY TRIAL PROCEEDINGS

\* \* \* \* \* \* \* \* \* \*

BEFORE:         The Hon. W. Harold Albritton

HEARD AT:       Montgomery, Alabama

HEARD ON:       January 30, 2004

APPEARANCES:    Stephen Feaga, Esq.

                Richard "Cracker" Waldrop, Esq.

Page 58

1 of the indictment, and we have agreed that if he
2 pleads guilty to all four of the counts of the
3 indictment, and this would be an 11(b) plea --
4 11(c)(1)(b) plea, we will recommend a sentence to the
5 Court, if he fully cooperates with us by testifying
6 truthfully when called on to do so starting next week
7 in another trial, that we will recommend a sentence to
8 the Court that does not exceed sixteen years. And the
9 Court will not be bound by that.
10        But if he testifies truthfully, we will
11 recommend a sentence of sixteen years if he pleads
12 guilty to all four counts of the indictment.
13        MR. WALDROP: And there is an additional
14 provision for a Rule 35, if he helps in the future.
15        MR. FEAGA: They have asked us if it's
16 possible that down the road if he provides additional
17 substantial assistance would we consider additional
18 Rule 35s, and with any defendant we would consider
19 that, but a decision whether or not to file that will
20 be exclusively within the domain of the United States.
21        THE COURT: All right. Anything else?
22        MR. WALDROP: That's my understanding of
23 what I presented to my client and the prosecutor.
24        THE COURT: I'll have the jury brought back
25 in and tell them we're going to take up a matter

Page 59

1 outside of their presence, and I'm going to ask them
2 to be back in the jury room at eleven-thirty. Then
3 we'll take the plea as soon as they leave.
4        MR. FEAGA: Yes, sir.
5        (Whereupon, the in-chambers conference was
6 concluded.)
7             DISCUSSION IN OPEN COURT
8             (THE JURY IS PRESENT):
9        THE COURT: Members of the jury, I've told
10 you earlier that sometimes things come up in the
11 course of TRIALS that require us to handle matters
12 outside the presence of the jury. Rather than keeping
13 you up in the air, we're going to be involved for
14 probably another thirty minutes, and so I wanted to
15 let you know that.
16        If any of you need to leave the courthouse
17 for any reason you're free to stay in the jury room
18 during this time, or go down to the jury assembly room
19 downstairs. Or if you want to walk outside the
20 courthouse, that's all right too.
21        But I'm going to ask you to be ready to come
22 back in at eleven-thirty.
23        (Whereupon, the jury was escorted out of the
24 courtroom.)
25             CHANGE OF PLEA PROCEEDINGS:

Page 60

1        THE COURT: I'm going to excuse this witness
2 at this time. If you'll hold her so we may need her
3 at a later time.
4        All right. The Court has been advised that
5 the defendant wishes to change his plea from not
6 guilty to guilty. And I'll ask the defendant and the
7 defense counsel to come forward to the lectern there.
8        All right. Mr. Waldrop, is that correct,
9 the defendant wishes to change his plea?
10        MR. WALDROP: That's correct, Your Honor.
11        THE COURT: And it's already been stated on
12 the record outside the courtroom that this plea, that
13 this decision was made pursuant to the plea agreement.
14 It's not been reduced to writing I assume, is that
15 correct?
16        MR. WALDROP: It has not been at this time,
17 Your Honor.
18        THE COURT: All right. Now the terms of the
19 agreement was stated. The defendant was not present
20 so I'll ask the prosecutor to state the terms of the
21 plea agreement.
22        MR. FEAGA: Yes, sir, Your Honor. There is
23 one other thing that I did not mention either, back
24 there, and that is if the Court at the time of
25 sentencing -- Well, I'll restate them and then I'll

Page 61

1 state the one I neglected to state.
2        The agreement that we've entered into, the
3 defendant will plead guilty to all four counts of the
4 indictment. If he pleads guilty to all four counts of
5 the superseding indictment, and if he cooperates with
6 the United States by providing substantial assistance,
7 which we define as testifying truthfully when called
8 upon to do so for the United States, starting next
9 week in a trial that we will have Monday of an
10 individual in a case called United States of America
11 vs. Calvin Couch, if he testifies truthfully when
12 called on to do so and he pleads guilty to all four
13 counts, we will recommend to the Court under a plea
14 taken in accordance with Federal Rule of Criminal
15 Procedure 11(c)(1)(b), it will be strictly a
16 recommendation to the Court, that he receive a
17 sentence of sixteen years.
18        We may, in addition, consider based on
19 whatever he may do down the road, the possibility that
20 within the sole discretion of the United States there
21 could be additional recommendations to the Court under
22 Rule 35. We won't exclude that possibility. We'll
23 leave that question open.
24        The other thing, though, that we would ask
25 for, Your Honor, is if the Court does go along with

Page 62

1 the recommendation of the United States and imposes a
2 sentence that does not exceed sixteen years that will
3 be recommended, that the defendant, assuming he gets
4 that sentence and not more, would waive his right to
5 appeal. If he gets more than that, obviously the
6 appeal waiver would not be enforced and he could
7 appeal.
8     THE COURT: All right.
9     Mr. Waldrop, is that your understanding of
10 the plea agreement?
11    MR. WALDROP: Yes, Your Honor.
12    THE COURT: Swear in the defendant, please.
13    (Whereupon, the defendant was duly sworn by
14 the courtroom deputy clerk.)
15    THE COURT: All right, Mr. Church. Do you
16 understand that you are now under oath, and that if
17 you answer any of my questions falsely, your answers
18 may later be used against you in another prosecution
19 for perjury or for making a false statements?
20 A Yes, sir.
21    THE COURT: What is your full name?
22 A Eugene Robert Church.
23    THE COURT: And how old are you?
24 A Forty-two or forty-three. Forty-two, I believe.
25    THE COURT: Okay. How far did you go in

Page 63

1 school?
2 A Twelfth grade.
3     THE COURT: Now have you been treated
4 recently, I know you have been incarcerated for a
5 while, but have you been treated recently for any
6 mental illness?
7 A Two years ago.
8     THE COURT: You were two years ago?
9 A Yes, sir.
10    THE COURT: Tell me the circumstances of
11 that.
12 A Depression.
13    (Whereupon, the defendant became emotional
14 and paused.)
15    THE COURT: That's all right. Take your
16 time.
17 A I suffer from posttraumatic stress syndrome.
18 It's from -- I was a boat captain, and a small boat
19 turned into us one morning and there was seven people
20 on the boat, and the boat went down. Six of the
21 people -- or one guy survived and one was drowned.
22    THE COURT: And after that you were are
23 treated for depression?
24 A Yes, sir. I was supposed to be taking three
25 hundred milligrams of Wellbutrin, fifteen milligrams

Page 64

1 of Klonopin a day and they were giving me something
2 for sleep.
3     THE COURT: Was that treatment at your home
4 in Panama City?
5 A It was from a doctor out of -- the doctor was out
6 of -- from New Orleans, and I was seeing a therapist
7 in Panama City.
8     THE COURT: When did you last see a
9 therapist?
10 A It's probably two years ago, a year and-a-half.
11    THE COURT: And when did you last take
12 medication for depression?
13 A About the time I started smoking crystal.
14    THE COURT: About when was that?
15 A That would be about a year and-a-half ago. Two
16 years ago now.
17    THE COURT: All right. Have you ever been
18 treated for addiction to narcotic drugs of any kind?
19 A No, sir.
20    THE COURT: Mr. Waldrop, I want to ask you
21 if you have any concern, based on your client's
22 treatment for depression, that or for any other
23 reason, if you have any reason to have any concern
24 about his competency to plead.
25    MR. WALDROP: No, Your Honor.

Page 65

1     THE COURT: Mr. Feaga, how about you?
2     MR. FEAGA: No, sir, Your Honor.
3     THE COURT: Mr. Church, are you currently
4 under the influence of any drug, medication or
5 alcoholic beverage of any kind?
6 A No, sir.
7     THE COURT: Now you've received a copy of
8 the indictment in this case, haven't you? That is the
9 charges pending against you.
10 A Yes, sir.
11    THE COURT: And have you fully discussed
12 those charges and the case in general with Mr. Waldrop
13 as your lawyer?
14 A Yes, Your Honor.
15    THE COURT: Are you fully satisfied with the
16 counsel, representation and advice given to you in
17 this case by Mr. Richard Cracker Waldrop as your
18 attorney?
19 A Yes, Your Honor.
20    THE COURT: We're in the middle of the
21 trial, and you have been hearing evidence in this case
22 and you've now said that you want to plead guilty.
23 And I assume that that's the result of discussions
24 that you and your attorney have had with the attorney
25 for the Government, is that right?

Page 66

1  A  Yes, Your Honor.
2      THE COURT: And you have heard the statement
3  which Mr. Feaga, the Assistant United States Attorney,
4  has made of a plea agreement that's been reached in
5  this case. It is not in writing, but it's been
6  recorded. Do you agree that's the plea agreement?
7  A  Yes, Your Honor.
8      THE COURT: Do you have any question about
9  it?
10 A  No, Your Honor.
11     THE COURT: You understand the terms?
12 A  Yes, Your Honor.
13     THE COURT: As I understand the agreement,
14 it is that you will plead guilty to all four counts of
15 this indictment; that the United States will make a
16 recommendation, a non-binding recommendation to the
17 sentencing judge, which I assume will be me, that you
18 receive sixteen years.
19     Also, that they will consider the
20 possibility that you will, in the event that you give
21 additional assistance, may make a request under Rule
22 35 for further reduction. That part of the reason for
23 this agreement by the Government is the expectation
24 that you'll testify in the case next week against Mr.
25 Couch, and other assistance that may be necessary.

Page 67

1  And that if you are sentenced to sixteen years, no
2  more than sixteen years, that you, as a part of the
3  agreement, will also waive any right to appeal this
4  case.
5      Is that your understanding?
6  A  Yes, Your Honor.
7      THE COURT: Now other than what I've just
8  told you about what would be in the plea agreement,
9  has anybody made any promise to you or assurance of
10 any kind in an effort to get you to plead guilty?
11 A  No, Your Honor.
12     THE COURT: Do you understand that the terms
13 of the plea agreement that I just stated and Mr. Feaga
14 stated are merely recommendations to the Court? That
15 I can reject the recommendations without permitting
16 you to withdraw your plea of guilty, and if I do
17 withdraw the recommendation and impose a sentence
18 that's more than sixteen years, that you would not be
19 able to withdraw your plea agreement, your guilty
20 plea. Do you understand that?
21 A  That I won't be able to withdraw my guilty plea?
22     THE COURT: That's correct. This is merely
23 a recommendation to me. It's not binding. And before
24 I sentence you, there will be a report made by the
25 probation office. I'll read that report and I'll

Page 68

1  consider whatever evidence is presented in court, and
2  I'll also consider the recommendation by the United
3  States that you receive a sentence of no more than
4  sixteen years.
5      However, that will only be a recommendation.
6  If I sentence you to more than that -- it could be a
7  lot more, I just don't know, I may accept the
8  recommendation of the Government, I may not -- but if
9  I sentence you to more than sixteen years, that's it,
10 you will not be able to withdraw your guilty plea and
11 go to trial. Do you understand that?
12 A  Yes, sir. Yes, Your Honor.
13     THE COURT: All right. Now we're in the
14 trial of the case, and I know that -- I understand
15 from previous advice before this trial week that
16 there's has been discussion about a guilty plea at
17 other times and that you had indicated an interest in
18 doing that but also you decided not to. Now I want to
19 ask you if anybody has forced you in any way, made you
20 any promises other than what we just talked about, to
21 get you to plead guilty in this case.
22 A  No, Your Honor.
23     THE COURT: Are you doing so of your own
24 free will?
25 A  Yes, Your Honor.

Page 69

1      THE COURT: Are you doing so because you
2  know you are guilty of these four offenses?
3  A  Yes, Your Honor.
4      THE COURT: Do you understand that the
5  offenses to which you are pleading guilty are felony
6  offenses, that if your plea is accepted you'll be
7  adjudged guilty of those offenses and that such
8  adjudication may deprive you of valuable civil rights,
9  such as the right to vote, the right to hold public
10 office, the right to serve on a jury and the right to
11 possess any kind of firearm?
12 A  Yes, Your Honor.
13     THE COURT: All right. Mr. Feaga, I'll ask
14 you to advise me of the maximum possible penalty
15 provided by law, and any mandatory minimum penalty as
16 to these four offenses.
17     MR. FEAGA: Yes, sir, Your Honor. With
18 regards to count one of the indictment, which is the
19 conspiracy count alleging a violation of Title 21
20 United States Code, Section 841 -- excuse me, Section
21 846 in the offense that was conspired to be committed
22 being 18 United States Code, Section 841(a)(1), that
23 is possession with the intent to distribute and
24 distribution of methamphetamine, the defendant would
25 be pleading guilty to a conspiracy to possess with the

## Page 70

1 intent to distribute and to distribute
2 methamphetamine.
3    Because the amount involved in the plea to
4 the which he will be admitting is more than fifty
5 grams of methamphetamine, the permissible sentences
6 that the Court can impose are a period of confinement
7 for that offense is of not less than ten years, nor
8 more than life, a fine of not more than four million
9 dollars, a period of supervised release of not less
10 than five years. And that under the Victim Witness
11 Protection Act a fee of one hundred dollars.
12    As to count two charging that the defendant
13 did possess with the intent to distribute fifty or
14 more grams of methamphetamine, again, because he will
15 be admitting during the plea that he did possess with
16 the intent to distribute on January 6, 2003, fifty or
17 more grams of methamphetamine, the maximum permissible
18 punishment is the same as it is for count one.
19    Would the Court want me to restate those?
20    THE COURT: Mr. Church, do you understand
21 what the Assistant United States Attorney said about
22 the penalty for count one, that there would be the
23 same thing for count two? Do you understand that, ten
24 years to life and the other provisions?
25 A  Yes, sir. Yes, Your Honor.

## Page 71

1    THE COURT: All right. It would be the same
2 thing for count two.
3    MR. FEAGA: Count three, your Honor, alleges
4 a violation of 18 United States Code, Section
5 924(c)(1)(a); that being an allegation that Mr. Church
6 did knowingly use and carry during and in relation to
7 and possess in furtherance of a drug trafficking
8 offense as charged in count two firearms. And those
9 firearms would be a Glock model nineteen, a Browning
10 high powered nine millimeter pistol, and a Rossi
11 thirty-eight revolver.
12    The punishment range for that is that the
13 Court would have to, I believe, impose a sentence of
14 not less than five years. Obviously, because the
15 statute is defined as "not less," the maximum
16 permissible under that is life also. The period of
17 supervised release for that offense, Your Honor, it's
18 my understanding there is not a period of supervised
19 release for that offense, and that the maximum fine
20 that could be imposed is a fine of not more than two
21 hundred and fifty thousand dollars and/or twice the
22 gross loss to the victim. So the maximum fine is two
23 hundred and fifty thousand because there is no loss to
24 the victim here. And then an assessment fee of one
25 hundred dollars under the Victim Witness Protection

## Page 72

1 Act.
2    With regards to count four, Your Honor,
3 alleging that the defendant was a user in possession
4 of a controlled substance -- excuse me, that he was a
5 user of an unlawful controlled substance while in
6 possession of firearms, those would be the same
7 firearms I just outlined in count three, the maximum
8 permissible punishment under that is a period of
9 confinement of not more than ten years, a fine of not
10 more than two hundred and fifty thousand dollars, a
11 period of supervised release of three years and a one
12 hundred dollar assessment under the Victim Witness
13 Protection Act.
14    THE COURT: All right. Mr. Church, there
15 has been mention that in addition to the time in
16 prison that you would be given a certain period of
17 supervised release. Do you understand that if after
18 getting out of prison you violated any of the terms of
19 supervised release, that you could be given additional
20 time in prison?
21 A  Yes, sir.
22    THE COURT: And do you understand those
23 possible consequences of your plea that were just
24 outlined by Mr. Feaga?
25 A  Yes, Your Honor.

## Page 73

1    THE COURT: Now under the Sentencing Reform
2 Act of 1984 the United States Sentencing Commission
3 has issued guidelines for judges to follow in
4 determining a sentence in a criminal case. Have you
5 and your attorney talked about how the sentencing
6 guidelines might apply to your case?
7 A  Yes, Your Honor.
8    THE COURT: Now do you understand that I
9 won't be able to determine the guidelines sentence for
10 your case until after the presentence report has been
11 completed, and you and the Government have had an
12 opportunity to challenge reported facts and
13 application of the guidelines recommended by the
14 probation officer? And that the sentence imposed on
15 you may be different from any estimate your attorney
16 may have given you. Do you understand that?
17 A  Yes, Your Honor.
18    THE COURT: And you understand that after
19 your guideline range has been determined, the Court
20 has the authority in some circumstances to depart from
21 the guidelines and impose a sentence that is more
22 severe or less severe than the sentence called for by
23 the guidelines?
24 A  Yes, Your Honor.
25    THE COURT: Do you also understand that

Page 74

1 parole has been abolished, and that if you're
2 sentenced to prison you will not be released on
3 parole?
4 A Yes, Your Honor.
5    THE COURT: And you understand, I believe I
6 asked you this, that by entering this plea agreement
7 and entering a plea of guilty, that if I accept the
8 plea agreement and sentence you to sixteen years and
9 no more than that and the other provisions in the
10 agreement, that you will have waived, that is given up
11 your right to appeal or collaterally attack all or any
12 part of this sentence? Do you understand that?
13 A Yes, Your Honor.
14    THE COURT: Do you understand that you have
15 the right to plead not guilty to any offense charged
16 against you and to persist in that plea, that you
17 would then have the right to a trial by jury, that is
18 in this case you would have the right to continue with
19 your trial before this jury?
20    That at this trial you are presumed to be
21 innocent, and the Government has to prove your guilt
22 beyond a reasonable doubt?
23    That you have the right to the assistance of
24 counsel for your defense, which you have had
25 throughout this trial?

Page 75

1    You have the right to see and hear all the
2 witnesses and have them cross-examined in your
3 defense? Some of that has already happened, there are
4 some other witnesses that would be called.
5    You have the right on your own part to
6 decline to testify unless you voluntarily elect to do
7 so in your own defense? And you have the right to the
8 issuance of subpoenas or compulsory process to compel
9 the attendance of witnesses to testify in your
10 defense. And should you decide not to testify or put
11 on any evidence, these facts cannot be used against
12 you?
13    Do you understand all of those rights that
14 you have?
15 A Yes, Your Honor.
16    THE COURT: Do you further understand that
17 by entering a plea of guilty, that if that plea is
18 accepted by the Court that will end the trial that
19 we're in the process of right now, and you will waive
20 or have given up your rights to a trial as well as
21 those other rights associated with the trial as I just
22 described?
23 A Yes, Your Honor.
24    THE COURT: Now there are four counts to
25 this indictment. And I'm going to ask Mr. Feaga to

Page 76

1 explain each of the four counts in the indictment and
2 to explain the essential elements of the offense; that
3 is, what the Government must prove beyond a reasonable
4 doubt for this jury to convict you of each count.
5 Listen carefully to Mr. Feaga as he goes over this.
6    MR. FEAGA: With regards to count one, Mr.
7 Church, that count charges that you and Gail Strother
8 and other people conspired to possess with the intent
9 to distribute and to distribute methamphetamine. And
10 it charges that you conspired to distribute more than
11 fifty grams of methamphetamine.
12    During this plea agreement I'm going to ask
13 you to admit that the amount that you were engaged in
14 a conspiracy with both Strother and other people to
15 distribute was between five hundred and one point five
16 -- five hundred grams and one point five kilos. But
17 certainly it's more than fifty grams, and you've heard
18 the testimony today. We're going to be asking you to
19 admit that it was between five hundred grams and one
20 point five kilos. The total amount. Okay?
21    Now, what we'd have to prove in order to
22 convict you of that conspiracy is that you, and one or
23 more persons, in some way or manner came to a mutual
24 understanding to try to accomplish a common and
25 unlawful plan. And that common and unlawful plan is,

Page 77

1 as I stated, to possess with the intent to distribute
2 and to distribute more than five hundred grams of
3 methamphetamine during the course of your
4 understanding and arrangement and agreement, that
5 being the conspiracy during the time frame that that
6 occurred. And, secondly, that you, knowing the
7 unlawful purpose of that plan and that agreement,
8 willfully joined into it and joined them with the
9 distribution of these drugs in possession with intent
10 to distribute. And, finally, you had to admit that
11 the object of that plan, the distribution of that
12 controlled substance, that being methamphetamine, that
13 that was what the object of the plan, was to
14 distribute those things.
15    So there is three elements. That you had an
16 understanding and the agreement with one or more of
17 the people, that you knowingly entered into it, and
18 that the object of the agreement was to possess and
19 distribute the controlled substance, methamphetamine.
20 That would be count one.
21    The count two charges you under 21 U. S. C.,
22 Section 841(a)(1) with possessing with the intent to
23 distribute fifty grams or more of methamphetamine on
24 January the 6th, 2003. Now you've seen the evidence
25 in this case, and you know that the Government's

Page 78

1 theory and our argument would have been, and we're now
2 going to ask you to admit, that you had in your
3 possession the amounts contained in Exhibits 8, 11 and
4 12, and that Gail Strother had in the room with you
5 fourteen point nine grams in the room with her. And
6 it's our position that they add up to more than fifty
7 grams. And although you let her have it you could
8 have easily have taken that back.
9     So on that day you did possess more than
10 fifty grams, albeit a few grams more. I think it adds
11 up to about fifty-five grams, but that's what that
12 charge is all about; that you and she possessed with
13 the intent to distribute that much meth on that day.
14 Okay? And in order to prove that, we'd have to show
15 that you knowingly and intentionally possessed that
16 methamphetamine, and that you possessed it with the
17 intent to distribute it. That it was your intention
18 that either you or Gail were going to distribute that
19 meth, aiding and abetting with one another. And you
20 have to admit to the weight of the meth, which is that
21 it exceeds fifty grams garages to plead guilty to that
22 count.
23     THE COURT: Let me stop you for just a
24 minute before you go to count three. Let me ask you
25 at this point, Mr. Church. Do you agree that you did

Page 79

1 all those things Mr. Feaga just said?
2 A Yes, sir. Yes, Your Honor.
3     THE COURT: All right. Go ahead to count
4 three.
5     MR. FEAGA: Now count three charges that you
6 possessed a firearm in furtherance of a drug
7 trafficking offense. And it actually charges you, as
8 you've seen in the indictment, with three firearms.
9 I've named those previously and you've heard them
10 referred to previously. It's the thirty-eight, the
11 Glock and the Browning. You're familiar with those
12 firearms. And what that charge, in order for the
13 United States -- for you to be convicted of that, what
14 you'll have to admit to today is that one, you
15 committed the drug trafficking offense that I just
16 outlined to you in count two, that you did in fact
17 possess with intent to distribute methamphetamine on
18 January the 6th, 2003.
19     Then we'd also have to prove, and we believe
20 the evidence would establish and already has
21 established, and you'll have to admit to it, that you
22 carried the firearm during the commission of that
23 offense, or that you possessed that firearm in
24 furtherance of that offense. Okay? So you either
25 possessed -- Excuse me, Your Honor. That you either

Page 80

1 possessed in furtherance of the offense or that you
2 carried it during and in relation to the offense.
3     I want to tell you what that means. You
4 understand what a firearm is, right?
5 A Yes, sir.
6     MR. FEAGA: Okay. In order to admit that
7 you were carrying it in furtherance of the crime, and
8 I'll tell you right now our theory, and I'll ask you
9 if you admit to that, in order to prove that you
10 carried it in furtherance of the crime we'd have to
11 show that you had a firearm on or around your person,
12 or controlled a firearm in such a way that it was
13 available for immediate use if you so desired, during
14 the commission of the drug trafficking offense.
15     Now one thing that we have been, I think,
16 off track and you would have explained to the jury and
17 explain to you now is it's never been our theory that
18 you implemented a weapon or used it against people.
19 But you had it on the table in case someone tried to
20 come in and take either your money from selling drugs,
21 or your drugs away from you. You even mentioned on
22 the videotape that somebody was trying to rob you and
23 you might have a shootout with them. So our theory is
24 you had a weapon to protect your drug money and drug
25 proceeds.

Page 81

1     We believe those facts that have been
2 outlined, that those pistols were on that table right
3 next to you with the drugs, and your money and your
4 statements that you would be willing to have a
5 shootout with somebody who was trying to take it away
6 from you, we believe that the correct inference from
7 that, that the reason you had those weapons was to
8 facilitate your drug operation in the sense of
9 protecting yourself and protecting being the drugs and
10 the money.
11     So we believe that we'd ask you to agree in
12 this plea that you were carrying them for such a
13 purpose, and that was a violation of the statute.
14     In addition, we believe that establishes
15 that you possessed those same firearms in furtherance
16 of the offense because that means something more than
17 mere presence of the firearm. It must be shown that
18 the firearm helped further promote or advance the
19 offense. And the offense is the possession with
20 intent to distribute that meth that day, not what
21 happened when the police came into your room.
22     Do you understand that? Do you feel you did
23 in fact violate that statute?
24 A Not really, but I'll plead to it.
25     MR. FEAGA: Well you have to say that you

Page 82

1  did in order to plead to it. You have to say that you
2  did in fact carry that firearm during the drug
3  trafficking objectives, and that means you either had
4  it on or around your person or transported or
5  controlled a firearm in such a way that it was
6  available for immediate use if you so desired during
7  the commission of the drug trafficking offense. To
8  carry during the offense in relation to the offense
9  means there must be a connection between the defendant
10 and the firearm and the drug trafficking offense, so
11 the possession of the firearm was not accidental but
12 facilitated the criminal activity with your intent to
13 distribute that drug.
14 A  Yes, sir.
15     MR. FEAGA: Do you admit that?
16 A  Yes, sir.
17     MR. FEAGA: The last offense indicates that
18 you were a user or addict of a controlled substance.
19 In this it charges that you were a user of a
20 controlled substance. And let me say to you we don't
21 doubt that you were an addict, okay? But in order for
22 you to plead guilty to being a user of controlled
23 substances and unlawfully in possession of a firearm,
24 we'd have to establish that you knowingly possessed a
25 firearm that moved in interstate commerce.

Page 83

1      You heard the testimony about where they
2  were manufactured, so to get here they would have had
3  to have crossed state lines, so you'd have to admit
4  that's interstate commerce. And the judge will
5  instruct you that that's what it is as a matter of
6  law. But second, you will have to admit that you are
7  an unlawful user of a controlled substance. And that
8  controlled substance would be methamphetamine. Okay?
9  You'll have to admit that you are a user of drugs, a
10 regular user of the drug. I think on the tape you
11 indicated that you used that day when you had that
12 firearm.
13     But in any event, you'll have to admit that
14 you were a regular user of controlled substances and
15 that you possessed a firearm on January the 6th while
16 you were a regular user of controlled substances.
17     And, thirdly, that that firearm had already
18 moved in interstate commerce.
19     Is it your position today that you want to
20 admit to the Court that you did in fact violate all
21 four of those statutes that are mentioned in counts
22 one through four?
23 A  Yes, sir.
24     MR. FEAGA: Your Honor, we would submit to
25 the Court that that is a sufficient factual basis, and

Page 84

1  that we've outlined the elements correctly.
2      THE COURT: All right. I don't know that we
3  need to go any further as to what the Government would
4  offer to prove the guilt of the defendant. The
5  Government has already put on substantial evidence
6  establishing the defendant's guilt in addition to the
7  statement that he made to the police.
8      Is there anything further, Mr. Feaga, that
9  you wish to state as to what your evidence would
10 prove?
11     MR. FEAGA: No, sir, Your Honor.
12     THE COURT: All right. Then, Mr. Church,
13 I'm going to ask you at this time as to count one,
14 count two, count three and count four of this
15 indictment, how do you plead, guilty or not guilty?
16 A  Guilty, Your Honor.
17     THE COURT: It is the finding of the Court
18 in the case of United States of America v. Eugene
19 Robert Church that the defendant is fully competent
20 and capable of entering an informed plea, that the
21 defendant is aware of the nature of the charges and
22 the consequences of the plea, that the plea of guilty
23 is a knowing and voluntary plea supported by an
24 independent basis in fact containing each of the
25 essential elements of the offense. The plea is

Page 85

1  therefore accepted, and the defendant is now adjudged
2  guilty of that offense.
3      The presentence report will be prepared, and
4  I will review it. And sentencing will be set for a
5  later date.
6      Now I plan to call the jury back in and tell
7  them that this cause has been terminated by the
8  defendant entering a plea of guilty. They're
9  obviously going to want to know what it's about. I
10 would propose that I tell them that the plea of guilty
11 has been entered to all four counts; that the
12 Government has agreed to recommend a sentence of
13 sixteen years with certain other provisions; that that
14 is a nonbinding sentence, and that sentence will be
15 entered by the Court at a later date.
16     Either side have any objection to that?
17     MR. FEAGA: Your Honor, we do you not. I
18 think it would probably be a good thing in terms of
19 the administration of justice if you let them know in
20 addition that he's agreed also to cooperate in the
21 prosecution of others.
22     And, Your Honor, one other thing that we did
23 discuss and the marshals have indicated, that because
24 he's been housed I think in the same cell with the
25 defendant he's going to be testifying against next

Page 86

1 week, Mr. Calvin Couch, we've asked the marshals and
2 they indicated they can do it, they will put him
3 somewhere else where he will not be in any danger or
4 in contact with that defendant or anyone else. That's
5 the only one we know of that would be a problem.
6    So we contemplate moving him to the Elmore
7 County facility with some of the other witnesses that
8 would be testifying in their own cause, they will all
9 be testifying next week.
10    THE COURT: All right, that's good.
11    Mr. Waldrop, you're in agreement that the
12 jury be told this?
13    MR. WALDROP: Yes, sir. I don't know if the
14 jury knows anything about Mr. Couch. I don't think
15 they're related to him from the standpoint if word got
16 out that he's going to testify next week.
17    MR. FEAGA: Calvin Couch's name is mentioned
18 in the video taped transcript.
19    MR. WALDROP: I was concerned about somebody
20 saying to someone on the jury about my client
21 testifying against someone else.
22    THE COURT: So you prefer to not have the
23 jury told that he's going to cooperate in other
24 persons' cases.
25    MR. WALDROP: Not naming the person.

Page 87

1    THE COURT: What I can do is say part of
2 this agreement that Mr. Church has agreed to is to
3 cooperate with the government in cases against others,
4 including testimony against others without any name or
5 time. Is that --
6    MR. WALDROP: I would prefer that for my
7 client's safety, Your Honor, if the Court sees fit.
8    THE COURT: Either side have any suggestion
9 as to anything further I should tell the jury?
10    MR. FEAGA: Nothing from the United States,
11 Your Honor.
12    MR. WALDROP: No, Your Honor.
13    THE COURT: All right. You can be seated.
14 Call in the jury.
15    (Whereupon, the jury was escorted into the
16 courtroom, and the following colloquy ensued):
17    THE COURT: Be seated.
18    Ladies and gentlemen, I've kept you back
19 there twiddling your thumbs for awhile, and I know it
20 has been time that you would have expected to be in
21 the courtroom. But as you see it will save you quite
22 a bit of time.
23    I want to advise you that the defendant, Mr.
24 Church, has just entered a plea of guilty to all four
25 counts in this indictment. In addition to pleading

Page 88

1 guilty, he has agreed to cooperate with the United
2 States in cases against others, including testimony
3 against others. In exchange for his plea of guilty,
4 the United States has agreed to recommend a sentence
5 of sixteen years with certain other provisions. That
6 will be a determination as to the final sentence that
7 I will make after having a report made by the
8 probation office. It will be sometime before
9 sentencing.
10    During that time Mr. Church will be in jail
11 and will be sentenced at a later date. The
12 recommendation of sixteen years is purely a
13 recommendation, and you won't have any part in it, but
14 I will. And I will pronounce the sentence at a later
15 time. So I wanted to advise you of that, let you know
16 what has happened.
17    Your presence here has been necessary, and
18 you'll receive checks in the mail when you leave and
19 go home.
20    I want to thank you for your attendance
21 here, and as you leave and are gathering up things
22 back in the jury room, I'd like to step back there and
23 thank you again for your services. So if you'll just
24 wait back there a few minutes, I'll speak to you.
25    At this time you are dismissed.

Page 89

1    (Whereupon, the jury was escorted out of the
2 courtroom.)
3    THE COURT: The defendant is recommitted to
4 the custody of the United States Marshal. Sentencing
5 will be set at a later date. Court's adjourned.
6    (Whereupon, the proceedings were concluded.)
7        * * * * * * * * * *
8        COURT REPORTER'S CERTIFICATE
9
10    I certify that the foregoing is a correct
11 transcript from the record of proceedings in the
12 above-entitled matter as prepared by me to the best of
13 my ability.
14
15    I further certify that I am not related to
16 any of the parties hereto, nor their counsel, and I
17 have no interest in the outcome of said cause.
18
19    Dated this 25th day of June 2005.
20
21
22        MITCHELL P. REISNER, CM, CRR,
         Official US Dist. Court Reporter
         Registered Professional Reporter
23       Certified  Real-Time  Reporter
24
25