**STATE OF ALABAMA**

**COUNTY OF COFFEE**

2:05cv403-A

### AFFIDAVIT

The undersigned being duly sworn, says: I am, Richard (Cracker) Waldrop, Attorney at Law, address, 210 East Grubbs Street, Suite 4, Enterprise, Alabama, telephone number (334) 393-2288. On October 28, 2003 I was appointed to represent Eugene Robert Church in the United States District Court, Alabama Middle District in Case Number CR-03-173-N.

An initial appearance hearing was held on October 28, 2003 and a detention hearing was held on November 3, 2003.

Prior to and at these hearings, I discovered that the Prattville Police Department, Prattville, Alabama had been conducting an ongoing undercover operation targeting suspects in the local area believed to be distributing illegal controlled substances. The investigation led to a white American female, named Gayle Strother, who was suspected of distributing large amounts of methamphetamine from her residence at 688 Summit Parkway, Town Suites, #207, Prattville, Alabama.

On January 6, 2003, as the result of criminal activity by Gayle Strother, a search warrant was obtained and executed at the Strother residence.

During the execution of the search warrant, a large amount of methamphetamine, a large amount of Xanax pills, Ecstasy pills, three (3) loaded

1

handguns, U.S. Currency in excess of $9,000.00, documents, and other paraphernalia were recovered.

Present at the Strother residence at the time of the execution of the search warrant was Eugene Robert Church, who was suspected to be Strother's Florida source for the methamphetamine. Church was arrested and transported to the Prattville Police Department where he was placed into a cell.

Church was then escorted to the investigations division and placed in to an interview room. Church was advised of his Miranda Rights and was asked if he wanted to cooperate and answer questions and/or make a statement to the investigating officers. Church agreed to answer questions and agreed to make a statement as was indicated on the Miranda form signed by Church. During the video taped interview, Church confessed to leaving Florida, going to Georgia, and picking up large amounts of methamphetamine and Ecstasy pills and brining them to the Prattville area to be distributed. Church further stated that Strother was one of his largest distributors of methamphetamine in the Prattville area. Church further stated, during his taped, oral interview, that he would deliver three (3) to four (4) ounces of methamphetamine to Strother and other local distributors in the Prattville area. Church admitted to owning the firearms that were confiscated by the arresting officers and he admitted that he did not possess a license to carry or possess a firearm. Based on Church's statement, the investigating officers determined that he was Strother's supplier of methamphetamine from Florida as they had suspected.

From reviewing the many volumes of discovery material furnished by the U.S. Prosecutor, seeing and reviewing Eugene Robert Church's taped confession, and reading the statements and confessions of many other defendants, who implicated Mr. Church, I advised Mr. Church that I did not believe that his case could be won at a trial on a factual basis and he agreed.

I explained to Mr. Church that I was a sole practitioner and would be facing a legal team consisting of many investigators, lawyers, and staff personnel.

I explained to Mr. Church that he would be able to make a proffer of information he knew concerning illegal activities to the U.S. Prosecutor, and in turn, he could expect the Prosecutor to recommend a reduced sentence, upon Mr. Church's plea of guilty.

From that point in time I focused my efforts on working out the best deal possible for Mr. Church.

On December 5, 2003, after reviewing a proposed plea agreement submitted by the U.S. Prosecutor, and having a conference with Mr. Church, in reference to same, I notified the Clerk's Office and the U.S. Prosecutor that Mr. Church whished to withdraw his demand for trial and enter his guilty plea. Also, I notified the U.S. Prosecutor that my client and I wanted to meet with him to make my client's proffer of information and evidence.

On December 15, 2003, my client and I met with the U.S. Prosecutor and case agents at which time Mr. Church answered the questions propounded by

said agents and gave information concerning his involvement on the charges against him and information he had about other individuals in the Prattville area who were conducting illegal controlled substance operations.

The basis of the settlement agreement was that upon entering a plea of guilty, by the Defendant to the offenses charged in Counts One and Three of the Indictment, the government agreed to recommend that the Defendant would receive three (3) points for acceptance of responsibility and that the Government would file a motion asking the court to reduce the Defendant's total monthly sentence by twenty five percent (25%).

The application of the guidelines contemplated in the settlement referred to above would result in a sentence of twelve (12) years in prison.

The court set a change of plea hearing for Mr. Church on December 22, 2003.

At the change of plea hearing, the Defendant did not sign the plea agreement until the Judge was taking the bench, and during the change of plea hearing, the Defendant stated that he did not wish to change his plea to guilty but wished to stand on his original plea of not guilty.

Up until that time, all my efforts had been made in securing the best plea agreement possible for Mr. Church. Upon Mr. Church's demand to go to trial, I immediately, the next day, December 23, 2003, drafted and filed a Motion to Suppress, Motion in Limine and requested a continuance of the trial, which had been set for January 6, 2004.

The court denied the Defendant's Motion to Suppress on the basis that it was untimely filed, however, the court also noted that the Motion would have been denied even if timely filed.

The Motion in Limine was also denied.

Trial started on January 29, 2004 and ended on January 30, 2004, after seven (7) hours of testimony, at which time the defendant entered a guilty plea and sentencing was set for April 23, 2004.

I met with Mr. Church many times prior to sentencing. At one of the meetings he gave me the name of Karen Hardiman, a therapist, and advised me that her office was located in Panama City Beach Florida across from the Ocean Opry. I was to contact this person and see if she had information, which might be beneficial in mitigating Mr. Church's sentence.

I went to Panama City Beach Florida, to the shopping center across from the Ocean Opry and tried to locate the therapist that Mr. Church had mentioned. I went to the rental office but was advised that they did not know of anyone at that complex by the name given me.

In the PSI Report, the Defendant reported that in approximately 1998, he was involved in a boating accident, which killed several people. The Defendant advised that as a result of the accident, he was unable to work for some period of time, due to psychological trauma and was involved in counseling. He stated that he was diagnosed with posttraumatic stress syndrome. However, the

5

Defendant could not remember the address of his psychiatrist or the name of his counselor.

I was able to obtain Mr. Church's high school equivalency certificate number N01474030, issued the 19th day of February, 1984 and forwarded it along with letters of recommendation/accommodation submitted on behalf of friends of Mr. Church to the probation officer to be used in anyway helpful to the Defendant in the probation officer preparing of her report.

Both plea agreements offered to Mr. Church, the one he did not accept, and the one, which he did accept, after the trial had begun, contained a clause in which he waived right to appeal. I did not appeal the decision of the court because Mr. Church had waived that right.

I believe that I gave Mr. Church the best defense possible under the circumstances, as there was a tremendous amount of evidence against him, in addition to the over two (2) hour video taped confession that he submitted to the police officers, prior to my becoming involved in the case.

Affiant further states that the matters and things stated herein are, to the best of his knowledge and belief, true.

_____
Richard (Cracker) Waldrop
Affiant

Sworn to and subscribed before me this __13__ day of May, 2005.

_____
Notary Public
My Commission Expires:
MY COMMISSION EXPIRES: Nov 29, 2006

6